IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RASHID A. ALI,<br>    Plaintiff,<br>    v.<br>SCOTT KASPRENSKI,<br>RALPH BAILEY,<br>JOHN BARLOW,<br>    Defendants. | 07-613<br>Civil Action: _____<br>Jury Trail Demand |

## COMPLAINT

This is a civil rights action brought by Rashid Ali, a pro se plaintiff and a state prisoner of Delaware, pursuant to 42 U.S.C. sections 1983 and 1997, requesting declaratory judgment, injunctive relief, and damages. Ali claims herein that Defendants committed several distinct acts or omissions to act in violation of his constitutional rights: specifically the use of excessive force in violation of the Eighth and Fourteenth Amendments' and Equal Protection and Ban on Cruel and Unusual Punishment Clauses; deliberately committed acts of retaliation in response to Ali's protected right to seek redress in violation of First Amendment's Freedom of Speech clause and the Eighth and Fourteenth Amendment's Ban of cruel and unusual punishment clause; and intentionally refused to protect Ali in violation of the above Amendments and the Privileges and Immunities Clauses of Article-IV; and also committed the torts of assault and battery and gross reckless negligence.

## JURISDICTION

The District Court has jurisdiction pursuant to 42 U.S.C. subsection 1331 (a) and 1334, and the Court has supplemental jurisdiction to hear subordinate tort claims under 28 U.S.C. section 1367 and applicable statutes.

## PARTIES

1. Plaintiff, Rashid A. Ali, is a state prisoner in the State of Delaware and committed to the Delaware Correctional Center. Ali is prosecuting his meritorious claims pro se and is a friend of the Court.

2. Defendant Scot Kasprenski was a correctional officer assigned to the Delaware Correctional Center for and during the relevant times below of Ali's claims. Kasprenski' duties are believed to entail general responsibility to ensure the safety and security of the institution, the prisoners, and the Staff at all times. His exact duties will be determined by discovery and amended if needed later. Kasprenski is believed to have been relieved of his position due to his malfeasance. At all times Kasprenski acted under the color of state law. He is sued in his individual and official capacity (if he is still employed as correctional employee).

1

3. Defendant Sergeant Ralph Bailey is a correctional officer assigned to the Delaware Correctional Center for and during the relevant times below of Ali's claims. Bailey's duties are believed to entail general responsibility to ensure the safety and security of the institution, the prisoners, and the Staff at all times, and he also supervises and trains his immediate subordinates, of which Kasprenski was for these claims. His exact duties will be determined by discovery and amended if needed later. At all times Bailey acted under the color of state law. He is sued in his individual and official capacity.

4. Defendant Lieutenant John Barlow is a Staff officer (i.e. lieutenant) assigned to the Delaware Correctional Center for and during the relevant times below of Ali's claims. Barlow's duties are believed to entail general responsibility to ensure the safety and security of the institution, the prisoners, and the Staff at all times, and he also supervises and trains his immediate subordinates, of which Kasprenski was for these claims. His exact duties will be determined by discovery and amended if needed later. At all times Barlow acted under the color of state law. He is sued in his individual and official capacity.

## FACTS

5. On 10-17-06 at about 14:00, Ali and inmate Richard Perez were returning from their work-site at Bldg. #15 Prison Industries (PI) with the Garment Shop (CDGM), and heading to their housing unit at the Minimum Security W-1 building. (W).

6. One must pass through three locked and manned gates (i.e. Correctional Officers (CO): one at post #28 (at T-3 junction) and a sally port type double gate at post #29 (which leads directly into W's yard. (Actually surrounds W's cartilage).

7. Defendant Kasprenski was stationed and or working at post #29 –W's gates- when Ali and Perez approached to gain ingress to their housing unit. Both gates were open and ajar, while defendant Kasprenski stood just inside the second gate, which is actually inside W's yard.

8. It is believed that post #29 has the responsibility to maintain the security of W's area, and must ensure that inmates coming and going have the proper authorization to do so. It also entails the opening and closing of these, normally locked gates, each and every time prisoner must ingress or egress W unit.

9. Ali and Perez were both authorized to enter W unit at the time as each had his respective Green Worker's passes that specifically permitted them to return from work to W unit at that specific time. (Monday -Friday)

2

10. Ali and Perez passed through the two open and ajar gates of # 29 and continued past defendant Kasprenski, but Kasprenski abruptly directed Ali an Perez to shut and lock Kasprenski's gates.

11. Ali respectfully informed Kasprenski –in a low voice and without any overt act or indication of hostility- that shutting and locking gate # 29 was not his job to do, but Kasprenski's, and Ali and Perez entered W's yard proper.

12. Ali and Perez had began to walk up the adjoining side walk, which ran parallel to the Counselor's Offices in W's recreation yard about twenty feet from defendant Kasprenski.

13. Kasprenski then yelled out to Ali and Perez: "You don't know who you're messing with, I'll punch you in your f!*#!ing [expletive] face!"

14. Ali's present sense impression of Kasprenski's emotional state was that he was acutely aggravated, and appeared to be enraged and hostile towards Ali and Perez.

15. Both Ali and Perez stopped in alarm to Kasprenski's direct and overt threat.

16. Kasprenski then immediately and abruptly charged toward and accosted Ali with a sudden and violent two hand thrust into Ali's upper torso that had enough force to knock Ali off balance and had it not been for Perez breaking Ali's fall, Ali would have violently struck the pavement.

17. Ali did not have time to make any overt move to raise his hands and/or defend himself from Kasprenski's violent attack.

18. The force was excessive, malicious, sadistic, and wholly unwarranted, and it physically knocked the wind out of Ali and he felt as though he could not breathe. Ali suffered internal brusing and acute pain for some two weeks afterwards, which was acute when he breath or lifted any weight over ten pounds.

19. Recreation for the inmates of W had been called ,and there were several witnesses to Kasprenski's sudden and violent assault of Ali: specifically inmates William Francis, Richard Perez, Jeffery Davis, Maurice Cooper, and Herman Suttler.

20. Eventually, Internal Affairs –only after Ali took extraordinary efforts to report the assault- were reluctantly forced to investigate and gather witness statements to the assault.

21. Ali immediately notified Kasprenski that he would report Kasprenski's direct threat and his subsequent assault to the Watch Commander.

22. Kasprenski mockingly responded: "Yeah, go ahead and grieve it too while you're at it!" "Do what you got to do"

23. Ali's presence sense impression of Kasprenski's emotional state and or behavior was that Kasprenski appeared to be non-plaused by Ali's announcement and that he did not believe the inmate grievance procedure would yield any meaningful repercussions.

24. However, Kasprenski then scrambled to lock the gates and he left the post to enter the housing unit: W.

25. Ali alternatively entered the WIAC (lieutenant's offices), and sought out the area supervisor: Lt. John Barlow.

26. Ali reported to Lt. Barlow Kasprenski's overt threat and subsequent assault, and that it was just witnessed by several people, but Barlow was wholly dismissive and un-interested and he treated Ali as a nuisance rather than one of Barlow's responsibilities for which he is to ensure their safety and security.

27. Barlow refused to investigate the fresh assault, refused to supervise his subordinate Officer Kasprenski, and refused to report Kasprenski's malicious and sadistic threat and assault of Ali.

28. Barlow is well aware that Kasprenski 's threat and assault is a direct and well known violation of the Department of Correction's Standard Operation Procedures (SOP) and violation of the Federal and State Constitutional protections against cruel and unusual punishment and/or assault and battery.

29. It is well settled and obvious to any layman that Kasprenski's acts violate the above constitutional protections.

28. Alternatively, Barlow dismissively stated: "File a grievance."

30. Ali's present sense impression of Barlow's bizarre behavior was that Barlow did not want to be bothered with Ali's serious claims, did not want to have to counsel and/or report a fellow subordinate, and was wholly dis-interested in doing any of the required acts of a direct supervisor- Barlow acted bored and disinterested.

31. Moreover, it is well known that the inmate grievance procedure does not permit action against any events or incidents that have their own internal procedures and or appeals, etc (i.e. such as classification, transfers, and officer disciplinary proceedings).

32. Barlow is aware of the fact listed at item #31 by virtue of his long-standing as Senior Staff member at DCC, and Barlow's direction (i.e. Ali to grieve the matter), was intentionally incorrect and designed to frustrate Ali's efforts to report the incident, because any such grievance would be dismissed summarily and Ali would have to file an alternate Internal Affairs complaint, if the assault was not reported as required by Staff.

33. Ali left Lt. Barlow's office shocked that he absolute refused to investigate or report the incident.

34. Ali entered his housing unit "W," and Kasprenski was behind the offer's desk beside Cpl. Rainey.

35. Ali reported to Cpl. Rainey Kasprenski's threat and assault.

36. Cpl. Rainey directed Ali to not worry about it because she was going to take care of it.

37. Ali stated that he was relieved someone was going to address the matter.

38. Immediately following Ali's announcement, Kasprenski demanded Ali's identification badge and stated that he was going to "write-up" (i.e. file disciplinary charges against Ali)

39. Ali stated that if he (i.e. Kasprenski) was intent on filing trumped-up disciplinary charges against Ali in an effort to justify Kasprenski's assault and attempt to dissuade Ali from reporting the matter (i.e. seeking redress, etc), that he "Ali" would file a complaint with IA and grieve the retaliation.

40. Kaprenski stated: "Do what you got to do, now give me your ID badge!"

41. Cpl. Rainey interjected with: "Now, hold on a minute."

42. But –from atop the second floor balcony- defendant Sgt. Bailey yelled down: "Ali get up here now!"

43. Kasprenski did in fact file bogus disciplinary charges against Ali in a direct response to Ali's notification of his intention to seek redress of Kasprenski's assault.

44. Kasprenski's retaliation is specifically prohibited by Inmate Grievance Procedures 4.4 (IGP) and well known.

45. Ali followed Bailey's direct order and Kasprenski followed close behind. Ali was sandwiched between the two and was in fear for his safety.

46. Bailey aggressively stated that he already knew all about the incident and Bailey ordered Ali to "let it go," and that if Ali pursued it any further, Ali would receive disciplinary charges and be transferred to the SHU [Security Housing Unit (i.e. lock down)]."

47. Ali's presenst sense impression of Bailey's emotional state and or acts was that Bailey was acutely aggravated and upset that Ali would spill the beans and report Bailey's subordinate officer (i.e. Kaprenski).

48. Ali announced that he would not let it go and that he would grieve it and also file a complaint to IA.

49. Bailey snapped out, with spittle flying from his mouth upon Ali: "Pack you sh*! [Expletive]! Ali –Now!"

50. Ali said nothing else and proceeded to his cell on D-tier to pack his belongings.

51. Kasprenski subsequently went to W bldg.'s computer and filed false charges against Ali, which consisted of the following: Disrespect 2.05, and Failing to Disobey an Order 2.06/200.108.

52. Kasprenski also fabricated the events therein and stated that he had secured Ali's ID badge at the gate, but this proved fatal to Kasprenski's false assertions because Ali's ID badge was not secured until Ali had entered W unit with Cpl Rainey present. This was one of many shadows cast upon Kasprenski's dubious and self serving assertions.

53. The disciplinary charges kicked in various procedures, which precluded Ali from being summarily transferred to the SHU, despite Bailey's efforts to usurp the SOP rules and move Ali to the SHU.

54. Bailey –like Barlow- refused to investigate the fresh assault, refused to supervise his subordinate Officer Kasprenski, and refused to report Kasprenski's malicious and sadistic threat and assault of Ali.

55. Bailey alternatively encouraged Kasprenski, to file false charges against Ali to cover Kasprenski's malicious and sadistic acts against Ali.

56. Bailey also condoned Kasprenski's filing of false charges, despite the knowledge that they were false.

57. Bailey's acts and omissions to act listed above satisfied no legitimate penological function.

58. Kasprenski's acts and omissions to act listed above satisfied no legitimate penological function.

59. Barlow's acts and omissions to act listed above satisfied no legitimate penological function.

60. Ali was finally exonerated of Kasprenski's false charges on or about 02-01-07, but only after taking extraordinary personal efforts to (a) Motive I.A. to investigate, and (b) impeach Kasprenski's version.

61. Ali filed a grievance on the date of the incident against Kasprenski, Bailey, and Barlow for the following: Kasprenski's threat, assault, and filing false charges in retaliation of Ali's exercise of the grievance procedure and/or seeking redress; Barlow and Bailey's refusal to supervise and train Kasprenski, and failure to ensure the safety and security of Ali from Kasprenski, and their repeat refusals to investigate and report the assault.

62. Ali's grievance was summarily dismissed due to a claim that it was not grievable under the IGP.

63. Ali was denied meaningful access to the IGP in violation of IGP rules and his constitutional rights to seek redress.

64. Ali filed a second grievance on or about 10-17-07 that also grieved the above incident.

65. It too was obstructed improperly, and Ali was denied any requisite hearings and thus DCC defaulted the IGP process and attempted to obstruct Ali's access to the courts by creating an impediment to the administrative exhaustion procedure.

66. Ali also filed a formal complaint with Internal Affairs, which outlined the events listed above in detail, and this was accepted as the appropriate administrative procedure for this type of incident.

67. Ali's notice/complaint of Kasprenski's et al acts were subsequently investigated and found to have merit buy the I.A. unit.

68. It appears that Kasprenski was forced to leave his employment as a correctional officer with the Delaware Department of Corrections as a condition of the department not seeking a criminal conviction for his unwarranted and unprovoked assault of Ali, but Ali was not consulted regarding any such agreement.

69. Ali's claims were vindicated, confirmed, and Ali exhausted all the administrative remedies available to him relating to the instant claims herein.

70. Defendants listed above new or should have known that their acts or omissions to act violated Ali's Federal Constitutional rights and/or State rights.

## CAUSE OF ACTION

71. The culpable acts/omissions to act of defendants Kaprenski, Bailey, and Barlow (items 2-70), in using physical force against Ali without need or provocation, and in failing to intervene to prevent Kasprenski's misuse of physical force were conducted maliciously, sadistically and absent any legitimate penological objective and constituted cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.

72. The culpable acts/omissions to act of defendant Kaprenski without need or provocation constituted the tort of assault and battery under the laws of Delaware and items 2-71 are incorporated herein to this second cause of action.

73. The culpable acts/omissions to act of defendants Bailey and Barlow to intervene, investigate, report, supervise, or take needed disciplinary action against Kaprenski for his assault upon Ali and subsequent retaliation -to curb Kasprenski's known and announced pattern of physical force and/or abuse of inmates- did constitute deliberate indifference to Ali's health, safety, security, well being, and Ali's right to be free from cruel and

7

unusual punishment; and it contributed to the violations described above in items 71 and 72, and it served no legitimate penological purpose at all. (Incorporated herein are items 71 and 72 into this third cause of action);

74. The culpable acts/omissions to act of defendant Kaprenski in his making express and direct threats of assault and/or threats of retaliation against Ali (i.e. For Ali seeking protected redress), by generating false disciplinary reports against Ali and subsequently realizing same, did violate Ali's right to be free from retaliation undre a protected Federal Constitutional and State right, and to be free from cruel and unusual punishment. (Incorporated herein are items 71, 72, & 73 into this fourth cause of action).

## DAMAGES

74. <u>DECLARATORY RELIEF</u>: That defendants above did violate Ali's right to be free from cruel and unusual punishment, free from the tort of assault, free from retaliation, and shall have the right of due process unimpeded.

75. <u>INJUNCTIVE RELIEF</u>: That defendants Bailey and Barlow shall be prohibited from conducting, directing, or participating --whether directly or indirectly and/or in any capacity- in any of the following as they relate to Ali: (a) Classification; (b) Both Intra and Inter-transfers (whether different housing units or different prisons; (c) Disciplinary hearings; (d) grievance hearings; and/or (e) Parole/Pardon Board and/or Institutional Modification hearings, decision making, or voting.

76. <u>COMPENSATORY DAMAGES</u>: To be determined/ computed according to the claims and facts listed above –for each individual defendant in his individual, separate, and official capacity- and as determined by a jury as appropriate.

77. <u>PUNITIVE DAMAGES</u>: To be determined/ computed according to the claims and facts listed above –for each individual defendant in his individual, separate, and official capacity- and as determined by a jury as appropriate.

78. The above is true and correct based on the best of Ali's knowledge and is made under penalty of perjury on this ___3___ day of October 2007 by the undersigned.

*[signature: Rashid a. ali]*
Rashid A. Ali, SBI #176898
1181 Paddock Rd. DCC Prison
Smyrna, DE 19977

8

STATE OF DELAWARE         )
                          ) SS
COUNTY OF New Castle      )

AFFIDAVIT OF: _RASHID ALIE_
DATED: _____

### AFFIDAVIT

I, _RASHID ALIE_, being first duly sworn deposes and says that the foregoing statement is a true and correct observation of what occurred on the above date herein at/in _DCC Prison_ located in the Delaware Correctional Center, Smyrna, Delaware, in that I was a part of or witnessed the incident described herein. I would clearly state under penalty of perjury of the laws of the State of Delaware.

1. Affiant swears that the information disclosed in his Application to Proceed Without Prepayment of Fees is true and correct.

Affiant: _____
                 Signature

_RASHID Ali_
Print Name
Delaware Correctional Center
Smyrna, DE. 19977

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 200_.

My Commission Expires:

_____
Notary Public

IM Rashid A. Ali
SBI# 00176898 UNIT W-1 Building
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



Office of The Clerk (Lock Box 18)

U.S. District Court
844 N. King Street
Wilmington, Delaware
19801