IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RASHID A. ALI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 07-613-SLR |
| | ) | |
| SCOTT KASPRENSKI, RALPH | ) | |
| BAILEY, and JOHN BARLOW, | ) | |
| | ) | |
| Defendants. | ) | |

Rashid A. Ali, James T. Vaughn Correctional Center, Smyrna, Delaware.  Pro Se Plaintiff.

Elizabeth A. Sloan, Blank Rome LLP, Esquire, Wilmington, Delaware.  Counsel for Defendant Scott Kasprenski.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants Ralph Bailey and John Barlow.

**MEMORANDUM OPINION**

Dated: August 18, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Rashid A. Ali ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He proceeds pro se and was granted leave to proceed in forma pauperis. Presently before the court are defendants' motions for summary judgment and plaintiff's request for counsel and motion for a second extension of time. (D.I. 84, 86, 89, 94) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons discussed, the court will grant defendants' motions and will deny plaintiff's motions.

## II. BACKGROUND

During the initial screening of the case, the court dismissed failure to protect claims against Lt. John Barlow ("Barlow") and Sgt. Ralph Bailey ("Bailey") and a retaliation claim against Barlow. The case proceeds on excessive force, retaliation, and assault and battery claims against C/O Scott Kasprenski ("Kasprenski"); a retaliation claim against Bailey; and claims against Barlow and Bailey for a tacit policy of condoning the alleged behavior of Kasprenski. Defendants filed motions for summary judgment, the court entered a scheduling order, and plaintiff moved for, and was granted, an extension of time until April 5, 2010 to file responses. (D.I. 91, 92) Plaintiff did not file responses within the required time and filed a second motion for a two-week extension until April 19, 2010. (D.I. 94) The motion is pending but, nonetheless, plaintiff did not respond to defendants' motions. Also pending is plaintiff's request for counsel. (D.I. 89)

On October 17, 2006, plaintiff and another inmate were returning to the W building from the garment shop where plaintiff worked. They walked down a path on the

compound and arrived at unit 29, manned by Kasprenski. It was raining, and he was sitting on two crates. According to plaintiff, Kasprenski told him to shut an open gate after he walked through it. Plaintiff responded that it was not his job. Plaintiff testified that inmates are not permitted to touch any security gates and the gate was supposed to be shut. (D.I. 85, ex. A11-16, 19, 33-34) Plaintiff testified that Kasprenski cursed and threatened to punch him in the face and "came toward the ramp, come running down and pushed [him]" with both hands. Plaintiff was pushed in the torso area and fell into the other inmate, but he did not fall to the ground. Plaintiff advised Kasprenski that he was going to report him to the watch commander. Plaintiff was sore for a few days, but did not seek medical attention and had no visible bruising.

According to Kasprenski, plaintiff became loud and obnoxious while waiting for Kasprenski to open the gates. Kasprenski ordered plaintiff to stop and turn over his identification so that he could issue a disciplinary report to plaintiff for disrespect. Plaintiff did not obey the order. Kasprenski reached out in an attempt to take plaintiff's badge, but missed. Plaintiff left the area without turning over his identification to Kasprenski. Kasprenski denies forcibly pushing or shoving plaintiff. (D.I. 87, ex. B Interrog. 11; ex. D)

Following the altercation with Kasprenski, plaintiff went to the W building to report the occurrence to Barlow, the area supervisor. Plaintiff told Barlow that he had been shoved by Kasprenski and Barlow asked him if he was okay. Plaintiff said, "yes, but he can't push me." Plaintiff wanted immediate action taken against Kasprenski. Plaintiff testified that Barlow told him to "go write a grievance", and never came out of the office or stopped working on his computer. (Id. at A20, ex. B Interrogs. 6, 11)

-2-

In the meantime, Kasprenski reported the incident to Bailey who was responsible for the supervision of the staff and inmates in the W-1 building area. After speaking to Barlow, plaintiff reported the incident to corporal Rainey ("Rainey").[1] Bailey then yelled from the second floor that Kasprenski had already told him what happened, ordered plaintiff to come up the stairs, acted like plaintiff had assaulted Kasprenski, and ordered plaintiff to pack his belongings because he was sending him to maximum security (i.e., SHU). Bailey met with both plaintiff and Kasprenski to hear their versions of the altercation. Bailey changed his mind and did not send plaintiff to SHU. Instead, according to plaintiff, Bailey and Kasprenski prepared a false write-up. According to Bailey, he ordered Kasprenski to prepare an incident report and a disciplinary report. Bailey told plaintiff that if he apologized to Kasprenski he would not receive a write-up. Plaintiff did not apologize and received a write-up. Plaintiff asked Bailey to call his supervisor, the watch commander, but he refused. (*Id.* at ex. A21-24, 27; ex. B, Interrogs. 5, 13)

Kasprenski's disciplinary write-up states that he asked plaintiff for his identification, but plaintiff ignored the order. Plaintiff testified that he was not asked for his identification until after the incident when he met with Kasprenski and Rainey. At that time, plaintiff gave his identification and work pass to Rainey. (D.I. 85, ex. A25-26, ex. C)

_____

[1]Bailey reported directly to the area lieutenant or higher authority. He was notified by the staff of any incidents in the area. Bailey supervised the W Building area which includes Post 29, an area rover position, but it was not under his direct supervision. Post 29 reports to the officers in the tower for instruction. Barlow was responsible for the security of the W-1 Housing Building on the day in question. (D.I. 85, ex. B, Interrog. 5)

Barlow prepared an incident report.[2] According to plaintiff, the report is totally false. Plaintiff sued Barlow because he prepared a false report, did not conduct an investigation, did not call the watch commander, and never asked if plaintiff required medical treatment. Plaintiff sued Bailey because he is the supervisor of the building, refused to call the watch commander, did not prepare an incident report, acted like plaintiff beat up Kasprenski, and never asked plaintiff if he required medical treatment. According to plaintiff, neither Bailey nor Barlow followed procedure. According to Barlow and Bailey, they did not become aware of the allegations against Kasprenski until after the incident occurred. Nor did they have a policy or custom of condoning inappropriate use of force on inmates and they were unaware of any prior incidents of inappropriate use of force by Kasprenski. Plaintiff sued Kasprenski because he assaulted him. (*Id.* at ex. A27-32. exs. G, F, H)

The matter was ultimately turned over to internal affairs, but plaintiff is unaware of the outcome of the investigation.[3] Plaintiff denied Kasprenski's charges and was given an administrative hearing. Kasprenski was not invited to attend the hearing to provide his version of the events. Following the hearing, plaintiff was found not guilty of Kasprenski's disciplinary write-up. Plaintiff heard from other inmates that Kasprenski had a track record of putting his hands on other inmates. Plaintiff filed a grievance regarding the October 17, 2006 occurrence the same day. It was returned as non-grievable. He filed a second grievance on August 27, 2007 complaining that he was not

---

[2]It appears that the incident report was not prepared until April 13, 2007.

[3]The report concluded that Kasprenski's account of the incident was not consistent with the facts developed in the investigation. (D.I. 73)

-4-

allowed to continue through the grievance process with his October 17, 2006 grievance. (D.I. 85, ex. A38-39, 43-44, 46-47, 51; exs. C, D, E; D.I. 87, ex. D)

## III. STANDARD OF REVIEW

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to

-5-

make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff did not file a response to either motion for summary judgment. The court, however, will not grant the entry of summary judgment without considering the merits of the unopposed motions. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

## IV. DISCUSSION

### A. Personal Involvement/Respondeat Superior

Bailey and Barlow contend that plaintiff's claims against them are constitutionally impermissible because he cannot establish that they were the "moving force" behind any constitutional violation or that they were "deliberately indifferent." In addition, they argue that the allegations of writing or filing false disciplinary reports or the failure to investigate or act after the fact do not state constitutional violations.

"'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. *Id.; see Monell v. Department of Social Services,* 436 U.S. 658, 694-95 (1978).

As is well established, supervisory liability cannot be imposed under § 1983 on a

-6-

respondeat superior theory.[4]  *See Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937 (2009); *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. 2005) (not published). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities. *Iqbal*, – U.S. –, 129 S.Ct. at 1949. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

Subsequent to *Iqbal,* there is some uncertainty over the continued existence of liability for a supervisor who knows about the unconstitutional conduct of subordinates and does nothing to stop it. *See Brickell v. Clinton County Prison Bd.*, 658 F. Supp. 2d 621, 625 (M.D. Pa. 2009). Yet Third Circuit precedent holds that supervisory personnel can be held liable under § 1983 if they had knowledge of, and acquiesced in, subordinates' constitutional violations. *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1191

---

[4]In *Iqbal*, the plaintiff alleged supervisory officials violated his rights because one official was the "principal architect" of the policy, and another was "implemental" in adoption and execution of the policy. *See id.* at 1944. The Supreme Court found the allegations facially insufficient. *See Iqbal*, 129 S.Ct. at 1949 (quoting *Robertson v. Sichel,* 127 U.S. 507, 515-516 (1888), for the proposition that "[a] public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

(3d Cir. 1995). There is no separate test for liability under § 1983 for supervisors; rather, each claim must satisfy the requirements of individual liability for each defendant regardless of supervisory position. *See Iqbal*, 129 S.Ct. at 1948-49. *See also Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (noting that in light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official).

Plaintiff testified that he sued Bailey and Barlow, in part, because of their supervisory positions. The record reflects that neither Bailey nor Barlow were personally involved in the incident between plaintiff and Kasprenski. It is undisputed that they were not made aware of the altercation until after the fact and that they did not have prior knowledge of any other alleged assaults by Kasprenski. Both state that they had no policy for, or condoned the use of, excessive force against inmates. Further, the record reflects that, subsequent to the occurrence, both Bailey and Barlow took action in an effort to discover what actually occurred between plaintiff and Kasprenski. Based upon the facts of record, a reasonable jury could not find that either Bailey or Barlow violated plaintiff's constitutional rights.

With respect to plaintiff's claims that Barlow authored a false incident report and Bailey encouraged Kasprenski to author a false disciplinary report, without more, this does not violate plaintiff's constitutional rights, particularly in light of the fact that plaintiff was not punished as a result of the alleged false reports. *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002). Indeed, as plaintiff testified, the disciplinary process worked in his favor and he was found not guilty of Kasprenski's charges. (D.I. 85, ex. A44) Finally, the failure to investigate claim fails as a matter of law. There was no

-8-

mandatory duty upon Bailey or Barlow to investigate the occurrence between plaintiff and Kasprenski. *See Schaeffer v. Wilson*, 240 F. App'x 974, 976 (3d Cir. 2007) (not published) (citing *Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 382 (2d Cir. 1973) (inmates failed to state a claim against state officials for failing to investigate or prosecute civil rights violations).

After reviewing the record, the court finds that there is insufficient evidence to enable a jury to reasonably find for plaintiff on the issue of whether Bailey and/or Barlow violated his constitutional rights. For the above reasons, the court will grant their motion for summary judgment.

## B. Retaliation

The court liberally construed plaintiff's complaint as raising retaliation claims against Bailey and Kasprenski. Proof of a retaliation claim requires that plaintiff demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

When asked during his deposition what claims he raised against defendants, plaintiff answered with a number of claims, but a retaliation claim was not one of them. Therefore, the court concludes that plaintiff waived any potential retaliation claims against Bailey and Kasprenski. Even had plaintiff proceeded with retaliation claims, it is evident from the record that he cannot meet the necessary prongs to prevail on said claims. While Kasprenski did author a disciplinary report, plaintiff was found not guilty

-9-

and, therefore, did not suffer an adverse action. In addition, the record does not support plaintiff's allegations that Bailey was somehow complicit in encouraging Kasprenski to author a false disciplinary report.

After reviewing the record, the court finds that there is insufficient evidence to enable a jury to reasonably find for plaintiff on the issue of whether Bailey and/or Kasprenski retaliated against plaintiff in violation of his constitutional rights. For the above reasons, the court will grant their motion for summary judgment on this issue.

## C. Excessive Force

Plaintiff claims that Kasprenski assaulted him and used excessive force on October 17, 2006, when he pushed him in the torso. Kasprenski denies that he pushed plaintiff, but that he reached out in an attempt to take plaintiff's identification badge. Kasprenski contends, assuming arguendo that plaintiff's allegations are true, that the alleged physical contact did not rise to the level of excessive force in violation of the Eighth Amendment.

A convicted prisoner's Eighth Amendment right to be free from cruel and unusual punishment is implicated when a prison official uses force against the prisoner. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Determining whether a prison official's use of force violates the Eighth Amendment requires a two-step analysis. First, the court must determine whether the force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" (the "subjective" component). *Hudson v. McMillian,* 503 U.S. 1, 6-7 (1992) (citing *Whitley,* 475 U.S. at 320-21). *See also Wilkins v. Gaddy*, – U.S. –, 130 S.Ct. 1175 (2010). Second, the court must determine whether the prison official's conduct was sufficiently

-10-

serious to violate "contemporary standards of decency" (the "objective" component). *Id.* at 8.

In determining whether force was used in good faith or sadistically or maliciously with intent to harm the prisoner, a court must consider several factors, including: the need for the use of force; the relationship between that need and the amount of force used; the extent of the prisoner's injuries; the extent of the perceived threat that the prisoner posed; and any efforts made by the prison officials to lessen the severity of the response. *Hudson,* 503 U.S. at 7; *Brooks v. Kyler,* 204 F.3d 102, 106 (3d Cir. 2000).

The facts construed in the light most favorable to plaintiff, the non-moving party, are that Kasprenski was verbally abusive and pushed plaintiff in the torso with both hands. Testimony provided by plaintiff indicates that he refused Kasprenski's order to close an open gate, telling Kasprenski that it was not his job. When pushed, plaintiff did not fall to the ground, but fell into another inmate. While he was sore for a few days, he sought no medical attention and had no visible bruising. Additionally, almost immediately after the altercation, when he reported the incident to Barlow, he told Barlow that he was "okay," but that Kasprenski could not push him.

Kapsrenski agues that plaintiff cannot establish either prong of the two-prong test and, therefore, the claim fails. He specifically argues that the force used was constitutionally de minimis and that a single push to the torso was a minor incident of physical contact that does not rise to the level of excessive force.

The Eighth Amendment does not protect an inmate against an objectively de minimis use of force, provided that the use of force is not "'repugnant to the conscience of mankind.'" *Whitley v. Albers,* 475 U.S. at 327 (quoting *Estelle v. Gamble*, 429 U.S.

97, 106 (1976)); *see also See Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (not published); *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002); *Reyes v. Chinnici*, 54 F. App'x 44, 48 (3d Cir. 2002) (not published) ("[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically"). The absence of a serious injury to the inmate is relevant, but not dispositive, to the inquiry of whether excessive force was used. *Hudson*, 503 U.S. at 7. Allegations of far more force than plaintiff was subject to have been deemed de minimis. *See, e.g., Reyes,* 54 F. App'x at 48 (corrections officer punched inmate in the shoulder to avoid being spit on); *Thomas v. Ferguson*, 361 F. Supp. 2d 435, 439-41 (D.N.J. 2004) (alleged conduct was not 'repugnant to the conscience of mankind' where inmate alleged he was punched and shoved by corrections officers).

Plaintiff has failed to show that he suffered an injury that was objectively "harmful enough" to establish a constitutional violation under the Eighth Amendment. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). Here, plaintiff was pushed, but did not fall down, and suffered no bruising. While he was sore for a few days, he sought no medical attention. He does not claim to have suffered any injury as a result of this incident. Notably, immediately after he was pushed he advised prison officials that he was "okay" and seemed more concerned with the fact that Kasprenski was not supposed to push him. The court finds that the conduct complained of (i.e., being pushed in the torso) does not describe a use of force that is "repugnant to the conscience of mankind." In addition, the absence of

-12-

any significant injury supports a conclusion that the force used with respect to the instant action was de minimis. *See Reyes v. Chinnici*, 54 F. App'x 44 (3d Cir. 2002) (the degree of a prisoner's injury can be taken into account by a federal district court in granting summary judgment to a corrections officer where the degree of force used was so minor that the court safely could assume that no reasonable person could conclude that the corrections officer acted maliciously and sadistically).

The record evidence in this action, viewed in the light most favorable to the plaintiff, does not support a reliable inference of wantonness in the infliction of pain under the Eighth Amendment. Accordingly, Kasprenski is entitled to summary judgment on the excessive force issue.

### D. State Claims

The court will grant summary judgment in favor of defendants on all federal constitutional claims. Therefore, the court declines to exercise jurisdiction over plaintiff's supplemental state law claims. 28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003).

### V. CONCLUSION

For the reasons discussed above, the court will grant defendants' motions for summary judgment and will deny plaintiff's pending motions.[5]

An appropriate order will be entered.

_____

[5]The court sees no need to discuss the remaining grounds for summary judgment, including the failure to exhaust administrative remedies and immunity of defendants.

-13-